UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                          CRIMINAL NO. 3:20-CR-134-KHJ-LGI

DEVADRICK MARKEVIN BOOKER

ORDER

Before the Court is Defendant Devadrick Markevin Booker's [97] Motion for New Trial. For the following reasons, the Court denies the motion.

I.      Background

The Jackson Police Department ("JPD") responded to a drive-by shooting near Booker's home on or about September 8, 2020. [60-3] at ¶ 3-4. The shooter shot Booker's cousin, Javonte Washington, in the wrist and leg. *Id.* Booker heard Washington screaming for help and, while JPD was on the scene, called Marzavier Harrington and Erica Burns to come to his house. *Id.* at ¶¶ 3-4. JPD officers called ATF Special Agent Micah Snyder around 3:04 a.m. to assist at the scene. [60-1] at ¶ 1.

Agent Snyder drove to the area in an unmarked car. *Id.* at ¶ 2. He arrived around 4:10 a.m., shortly after JPD left the scene. *Id.* He passed Booker's house on his passenger side and did not see officers or anyone else outside. *Id.* He continued past the house then lowered his window as he turned around to leave. *Id.* As he passed the house a second time, he saw Booker standing in the driveway and pointing a pistol in his direction. *Id.* Agent Snyder accelerated, then heard

gunshots. *Id.* at ¶ 2. One of the shots hit his driver-side rear door handle. *Id.* at ¶ 8.

Agent Snyder and JPD returned to the scene and saw a vehicle parked in the driveway with two individuals inside. *Id.* at ¶3. The officers ordered the two individuals to step outside the vehicle and identified them as Harrington and Burns. *Id.* Harrington told the officers he arrived while JPD was on the scene but was still present when Agent Snyder drove by. [60-2] at ¶¶ 3, 6. Harrington said he saw Booker shoot three or four times. *Id.* at ¶ 7. Booker confessed to shooting at the vehicle in a later interview. [60-3] at ¶ 8. He said he shot at the vehicle because he was scared from the earlier drive-by shooting and believed the driver was about to shoot at him. *Id.* at ¶ 7.

A federal grand jury indicted Booker for assaulting a federal law enforcement officer, in violation of 18 U.S.C. § 111(a)(1), and for discharging a firearm during a violent crime, in violation of 18 U.S.C. § 924(c). Trial began on November 1, 2022. Before closing arguments, Booker's counsel proposed a jury instruction on Mississippi's justifiable homicide or "castle doctrine" defense, asking the Court to inform the jury of Booker's right to defend his home under state law. Trial Tr. vol. 2 [101] at 58-59. The Court rejected the instruction. Trial Tr. vol. 3 [102] at 4.

After closing arguments, the jury found Booker guilty on both counts. [87]. Booker now moves for a new trial. [97].

II.     Standard

Rule 33 governs Booker's motion for a new trial, which the Court reviews "under a more lenient standard than a motion for judgment of acquittal." *United*

2

*States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997). District courts have discretion under Rule 33 to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). But a court should do so "only in exceptional cases." *United States v. Sipe*, 388 F.3d 471, 493 (5th Cir. 2004). "The trial judge may weigh the evidence and assess the credibility of the witnesses in considering the motion." *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005). But "[it] may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Robertson*, 110 F.3d at 1118. To grant a new trial, "[t]he evidence must preponderate heavily against the verdict," such that letting the verdict stand "would be a miscarriage of justice." *Id.*

III. Analysis

Booker argues he is entitled to a new trial because the verdict is against the weight of the evidence. [97] at 5. He also argues denial of a jury instruction resulted in jury confusion, and the certain remarks in the Government's closing argument were inflammatory. *Id.* at 8-9. The Government responds that the weight of the evidence supports the verdict; the Court properly denied Booker's proposed jury instruction and sufficiently instructed the jury; and its remarks during closing do not warrant a new trial. [103] at 2-4; Supp. Resp. [104] at 1.

A. Weight of the Evidence

Booker's first argument primarily relates to his conviction for Count I—assault on a federal law enforcement officer in violation of 18 U.S.C. § 111. *See* [97] at 5. But because Count II—discharging a firearm during a violent crime in

violation of 18 U.S.C. § 924(c)—rests on his conviction for Count I, he argues his conviction was erroneous as to both counts. *Id.* at 5-6. He argues his case was an "exceptional case" contemplated in the Supreme Court's interpretation of 18 U.S.C. § 111. *Id.* at 6-7.

Section 111 criminalizes assaulting a federal officer engaged in the performance of his duties. The statute only requires an intent to assault rather than intent to assault a federal officer specifically. *United States v. Feola*, 420 U.S. 671, 684 (1975). The statute exists to protect federal officers and employees, and that protection would be inadequate if the intent element was narrower. *Id.* (noting lack of protection for undercover agents and those enforcing "unpopular law" as consequences of narrower interpretation). The intent requirement is also fair to defendants because, even if the agent is undercover, a defendant "knows from the very outset that his planned course of conduct is wrongful." *Id.* at 685. But in some circumstances, such as "where an officer fails to identify himself or his purpose, his conduct . . . might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property," a defendant's state a mind may be relevant to guilt under § 111. *Id.* at 686. Booker relies on that language and *United States v. Alvarado*, 630 F. App'x 271 (5th Cir. 2015) (per curiam), to argue his state of mind is relevant to whether he is guilty. [97] at 6-7.

*Alvarado* involved an undercover agent in an unmarked Jeep who was part of a Homeland Security investigation. 630 F. App'x at 272, 277. A father and son, whose family was recently victim to an armed intruder, thought the agent was

4

another intruder. *Id.* at 274. They pursued him in a truck and fired at his vehicle. *Id.* The defendants were charged with the same crimes as Booker along with attempted murder of a federal officer. *Id.* at 273. They likewise urged the district court to instruct the jury on self-defense, which it denied. *Id.*

The Fifth Circuit affirmed the district court's denial of a self-defense instruction, pointing to two main facts: (1) the agent "did nothing aggressive but began his attempt to escape as soon as [the father] drove towards his vehicle," and (2) no evidence suggested that the defendants believed the gunshots they heard came from the Jeep. *Id.* at 274. It held that neither the defendants' recent experience with an armed intruder, nor their testimony that they heard gunshots before they fired their weapons, were enough to call for a self-defense instruction. *Id.* at 274-75.

*Alvarado* is both legally and factually insufficient to support Booker's "exceptional case" argument. First, it does not establish a concrete exception to § 111. *Feola* explicitly held the statute's intent element requires an intent to assault, rather than intent to assault a federal officer. *See Feola*, 420 U.S. at 684. And although it noted some circumstances may be relevant to guilt, neither *Feola* jurisprudence nor Fifth Circuit precedent establishes an exception. Booker cites no authority to show otherwise.

Second, the Fifth Circuit affirmed the district court's denial of a self-defense instruction in *Alvarado*. Although Booker may not have continued his pursuit of Agent Synder after firing two shots at his vehicle, like the defendants did to the

5

agent in *Alvarado*, the operative facts are the same. Booker supplied no evidence that (1) Agent Snyder's conduct could "reasonably be interpreted as the unlawful use of force" directed at him, *see Feola*, 420 U.S. at 686, or (2) that Booker "definitely believed" Agent Snyder's vehicle posed a threat simply by driving by, *see Alvarado*, 630 F. App'x at 274.

Most importantly, even if *Alvarado* showed his entitlement to a self-defense instruction, Booker's "exceptional case" argument does not show how the evidence "preponderate[s] heavily against the verdict," nor how letting the verdict stand would be a "miscarriage of justice." *See Robertson*, 110 F.3d at 1118. The Court denies Booker's request for a new trial based on the weight of the evidence.

B.  Jury Instruction

Booker next argues the Fifth Circuit pattern jury instructions the Court gave at trial insufficiently informed the jury as to the applicable law because it should have included instruction of Mississippi's justifiable homicide or "castle doctrine" defense. [97] at 8-9. Booker's proposed instruction reads:

> A person who is not the initial aggressor and is not engaged in unlawful activity shall have no duty to retreat before using deadly force, if the person is in a place where the person has a right to be, and no finder of fact shall be permitted to consider the person's failure to retreat as evidence that the person's use of force was unnecessary, excessive or unreasonable."

*See Williams v. State*, 343 So.3d 1035, 1037-38 (Miss. 2022) (noting identical instruction tracks language of Miss. Code Ann. § 97-3-15(4)). Booker argues failure to give the instruction resulted in jury confusion because the jury sent a note to the

Court during its deliberations with four questions. *Id.* at 9.[1] The Government argues the questions alone do not indicate sufficient "jury confusion" to warrant a new trial, and the Court's instructions adequately addressed self-defense. [103] at 4.

District courts have discretion to deny a requested jury instruction. *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011). Denial of a requested instruction amounts to an abuse of discretion "only if the requested instruction (1) was a substantially correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense." *Id.* (citation omitted).

Booker's requested castle-doctrine instruction raises two issues: (1) whether a state-law defense applies to a federal prosecution; and (2) whether the Court's given instructions were adequate. To the first issue, the Court declined to give the castle-doctrine instruction at trial because Booker provided no authority indicating a state-law defense applies to a federal crime. Trial Tr. vol. 3 [102] at 3-4. Likewise, the Court could not find any authority to that point. It instead found authority to the contrary. *Id.* (discussing *United States v. Kleinebriel*, 966 F.2d 945, 951 n.13 (5th Cir. 1992) (affirming district court's denial of instruction on Texas state-law defense to same charge)). Booker's motion likewise fails to cite authority on that

---

[1] The substance of the four questions is not at issue or relevant to the analysis, but Booker recounts them as follows: (1) "Can you please explain page 9 paragraph 2 and 3 [of the jury instructions]?"; (2) "Is it on us to determine if Booker was assaulted or not?"; (3) Is it on us to determine if Booker believes he was assaulted?"; and (4) "What is the definition by law of reasonable?" [97] at 4.

7

proposition. The Court is still unaware of any such authority, and the Fifth Circuit has conveyed refusal to allow state-law defenses to federal prosecutions is proper. *See Kleinebriel*, 966 F.2d at 951 n.13; *United States v. Davis*, 690 F.3d 330, 341 n.10 (5th Cir. 2012) (discussing cases rejecting defendants' attempts to assert state-law defenses to federal prosecutions and affirming district court's denial of Texas state-law mistake-of-law defense).

As for the adequacy of the Court's instructions, Booker's argument that failure to give the instruction "resulted in jury confusion" also lacks merit for at least two reasons. First, he bases jury confusion on the note the jury sent back during deliberations with four questions. But the Court crafted a proposed response to those questions with the assistance of counsel before sending the note back to the jury, and Booker agreed with that response.

Second, the Court gave the Fifth Circuit pattern jury instructions applicable to § 111, and Booker does not argue those instructions are an incorrect statement of the law. *See United States v. Rodriguez*, 821 F. App'x 371, 373 (5th Cir. 2020) (per curiam) ("A district court does not err by giving a charge that tracks [the Fifth Circuit's] pattern jury instructions and is a proper statement of the law."); *United States v. Leach*, 477 F. App'x 274, 276 (5th Cir. 2012) (per curiam) (finding no error in district court giving pattern jury instructions on § 111). When the jury asked questions, the Court properly referred them back to the instructions. *See United States v. Marshall*, 283 F. App'x 268, 279 (5th Cir. 2008) (noting reference to original instructions sufficient response to jury questions if original charge is

accurate statement of law). Booker does not otherwise explain how the jury instructions entitle him to a new trial.

### C. Remarks in Closing Argument

Finally, Booker argues the Government "[r]esorted to inflammatory remarks that misconstrued facts, were incorrect assertions of the law, and simply untrue." [97] at 9. The Government argues none of those remarks warrant a new trial. [103] at 4.

Counsel has "much latitude during closing argument, and [the Fifth Circuit] gives deference to a district court's finding as to whether an argument is prejudicial or inflammatory." *United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001). Improper remarks during closing argument standing alone are insufficient to warrant a new trial; a defendant must show that "the prosecutor's remarks affected his substantial rights." *Stewart v. Middlebrooks*, No. 3:19-CV-55, 2021 WL 3572667, at *16 (N.D. Miss. Aug. 12, 2021) (citing *United States v. Young*, 470 U.S. 1, 11 (1985); *United States v. Simpson*, 901 F.2d 1223, 1227 (5th Cir. 1990)). For example, the Fifth Circuit has affirmed denial of a new trial based on the Government's remarks in closing argument even when the remarks were "disturbing and unprofessional" because they did not compromise the defendant's substantial rights. *United States v. Bennett*, 874 F.3d 236, 256 (5th Cir. 2017). It has held otherwise when the prosecutor vouched for its own witnesses and the conviction turned on credibility. *See id.* n.74 (collecting cases).

9

Booker objects to three remarks. *Id.* at 9-10. The Court addresses each in turn, starting with his assertion that the following remark is an incorrect statement of law:

> But you cannot just take a gun and shoot at somebody just in case. You have to practice some self-restraint. If you think you're about to get another drive-by within ten minutes—that's been the testimony—of the police and AMR leaving, you do what Mr. Booker's said in his interview when he testified, you go inside. You lay down.

[97] at 9 (quoting Trial Tr. vol. 3 [102] at 91). Booker argues those remarks are incorrect because Booker "had no duty to retreat in his home." *Id.* But that argument rests on the castle-doctrine defense, which Booker failed to prove applies to his federal prosecution. Accordingly, that remark does not warrant a new trial.

Booker next argues the following remark mischaracterized evidence and was "an attempt to malign [him]":

> Now, Mr. Booker wants to state that it also happened weeks prior. He wants you to feel bad for him. This happened weeks prior, but I didn't have anything to do with that. But you take a look at his interview, and that's not exactly what he said in that interview. He said it hit the other guy's house, but I think it was meant for me.

[97] at 9-10 (quoting Trial Tr. vol. 3 [102] at 93). Booker's counsel objected to the statement at trial. [102] at 93. The Court overruled the objection but reminded the jury that their own, independent recollection of evidence is what controls, rather than what the attorneys say at closing argument. *Id.* Booker now argues nothing during the interrogation suggested that he thought the shooting at his neighbor's residence was aimed at him. [97] at 10.

Booker's argument fails for two reasons. First, the Government's remarks describe an interview, which the jury had the ability to review itself. The remarks did not attack the credibility of any witness. *See Bennett*, 874 F.3d at 256 n.74. Second, Booker does not explain how his belief of who the shooting was "meant for" turns on his guilt or innocence. Even if the remarks were improper, he does not explain how they "affected his substantial rights." *Stewart*, 2021 WL 3572667, at *16. The second set of remarks does not warrant a new trial.

Finally, Booker argues the following remark is egregious:

> You're being asked by the defense to find that Special Agent Snyder committed an assault, and that Mr. Booker thought it was just a private citizen that he needed to defend himself—there's the instruction—against the assault by a private citizen, because it didn't know it was a federal agent. But that's not the case. The first scenario I gave you, that would be the case; that's not where we are . . . .
>
> What he's trying to do is, he's trying to—he's trying to make you think . . . .

[97] at 10 (quoting Trial Tr. vol. 3 [1-2] at 94). Booker notes the Court sustained an objection to those remarks as an attempt to place the burden of proof on Booker. *Id.*; [102] at 95-96. The Court reminded the jury that the burden remained with the Government throughout the trial and noted that rule was in the jury instructions. *Id.* at 96. Relying only on one Ninth Circuit decision, Booker now argues that instruction was insufficient to "put [the remarks] out of their minds." [97] at 10-11 (quoting *Az Din v. United States*, 232 F.2d 283, 285 (9th Cir. 1956)).

11

In *Az Din*, the defendant objected to the relevant remark as "prejudicial error and misconduct," and asked for a mistrial. 232 F.2d at 285. The trial judge denied the motion for mistrial but instructed the jury to disregard the remark. *Id.* at 286. The Ninth Circuit noted the remark did not relate to the charge against the defendant or have any support from the evidence in the case but concluded the trial judge's instruction to disregard the remark was sufficient because it had "no reason to believe that the jury did not do so." *Id.* Accordingly, the Ninth Circuit found no reversible error and declined to reverse the defendant's conviction. *Id.*

Similar here, the Government's remark during closing argument was improper only to the extent that it attempted to place the burden of proof on Booker. Out of the abundance of caution, the Court not only sustained the objection and reminded the jury that the burden stays with the Government throughout the case, but also reminded the jury that their own independent recollection of the evidence controls the case rather than counsel's arguments. Trial Tr. vol. 3 [102] at 96. Other than quote *Az Din*, Booker gives "no reason to believe that the jury did not do so." *See* 232 F.2d at 285. Even if the remark were improper, the Court's instructions related to the Government's burden were curative. *See United States v. Waguespack*, 935 F.3d 322, 335 (5th Cir. 2019) (holding similar).

Ultimately, Booker fails to demonstrate that "the evidence . . . preponderate[s] heavily against the verdict," or that a "miscarriage of justice" would result from letting the verdict stand. *See Robertson*, 110 F.3d at 1118. None of his asserted grounds warrant a new trial.

IV.     Conclusion

For the foregoing reasons, the Court DENIES Defendant Devadrick Markevin Booker's [97] Motion for New Trial.

SO ORDERED, this the 26th day of January, 2023.

s/ <i>Kristi H. Johnson</i><br>
UNITED STATES DISTRICT JUDGE